United States District Court
Southern District of Texas

**ENTERED**

January 22, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SYLVIA GALLEGOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-201 |
| | § | |
| NANCY A. BERRYHILL,[1] | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before the court[2] are Defendant's Cross-Motion for Summary Judgment (Doc. 8) and Plaintiff's Motion for Summary Judgment (Doc. 10). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED IN PART AND DENIED IN PART** and Defendant's motion be **GRANTED IN PART AND DENIED IN PART.**

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or

---

[1]     Carolyn W. Colvin was the Commissioner of the Social Security Administration ("SSA") at the time that Plaintiff filed this case but no longer holds that position. Nancy A. Berryhill is Acting Commissioner of the SSA and, as such, is automatically substituted as Defendant. See Fed. R. Civ. P. 25(d).

[2]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 2, Ord. Dated Jan. 24, 2017.

"Defendant") regarding Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").

Plaintiff was born on May 5, 1955, and was 58 years old on the alleged disability onset date of June 1, 2013.[3]  Plaintiff, who completed three years of college, worked as a fast-food manager from January 1997 to January 2005 and a retail-sales associate from January 2005 to June 2013.[4]  The medical records generally support a history of surgical amputation of a toe and treatment for arthralgia in the ankle and foot, arthritis, spinal impairments, carpal tunnel syndrome, hypertension, and hypercholesterolemia.[5]

## A.   SSA Application

Plaintiff applied for disability insurance benefits on February 18, 2014, claiming an inability to work since June 1, 2013, due to toe amputation, arthritis, herniated disc, pinched nerve, hypertension, and high cholesterol.[6]  In documentation submitted to the SSA in connection with the disability-

---

[3]     See Tr. of the Admin. Proceedings ("Tr.") 55.

[4]     See Tr. 32-34, 60, 157, 164.  The record contains a discrepancy in the date at which Plaintiff began working as a fast-food manager.  Compare Tr. 157 with Tr. 164.  The discrepancy may be attributable to Plaintiff's working as line staff for the restaurant before being promoted to manager.  Cf. Tr. 32 (stating that she "started just as a regular employee").

[5]     See generally Tr. 224-437.

[6]     See Tr. 14, 55, 63, 156-57.  The document identified on the Court Transcript Index as Plaintiff's application is incomplete.  See Tr. 135-36.  The index indicates that the application was dated March 28, 2014, but the only page in the administrative record of what appears to be the original application was dated February 27, 2014, by Plaintiff.  See Tr. 136.  The ALJ stated that the date of her application was February 18, 2014.  See Tr. 14.  As the application in the record is incomplete and the date of the application is not an issue in dispute, the court relies on the date identified by the ALJ.

determination proceedings, Plaintiff reported that she required the assistance of a cane to ambulate.[7]  Plaintiff also described her past relevant work.[8]  Her job as a fast-food manager entailed preparing food, hiring and managing staff, setting work schedules, handling accounts, making bank deposits, submitting food orders, and managing inventory.[9]  As a sales associate, Plaintiff made floor sales, stocked shelves, provided customer service, assisted with inventory, and worked as a cashier.[10]

In May 2014, the SSA found Plaintiff not disabled at the initial level of review.[11]  Specifically, the disability adjudicator found Plaintiff capable of performing her past relevant work of manager and sales associate, which was generally performed at the light exertional level.[12]  On reconsideration in August 2014, the SSA again found Plaintiff capable of her past relevant work.[13]  Plaintiff requested a hearing before an administrative law judge ("ALJ") of the SSA.[14]

---

[7]     See Tr. 162, 179, 196.

[8]     See Tr. 165-66.

[9]     See Tr. 165.

[10]    See Tr. 166.

[11]    See Tr. 55-62.

[12]    See Tr. 59-60.

[13]    See Tr. 63-71.

[14]    See Tr. 88-89.

3

**B.   <u>Administrative Hearing</u>**

The ALJ granted Plaintiff's request and scheduled the hearing on September 14, 2015.[15]  Plaintiff, who was sixty years old on the date of the hearing, and a vocational expert ("VE") testified at the hearing.[16]

In addition to discussing her physical ailments, Plaintiff addressed her past relevant work as a fast-food manager and a sales associate.[17]  Plaintiff stated that she started working part time at a sandwich shop while attending college before being promoted to manager.[18]  In response to the inquiry whether she hired and fired employees and managed "the whole store," Plaintiff confirmed that she did.[19]  The ALJ asked no other questions about Plaintiff's job duties as a fast-food manager.[20]  Plaintiff explained in more detail her duties as a sales associate for Walmart, stating that she "[s]tarted as a cashier, and then they sent [her] to customer service. . . . [T]hey sent [her] to the floor, and [she] did everything on the floor" wherever management needed her.[21]  Her

---

[15]   <u>See</u> Tr. 111-19.

[16]   <u>See</u> Tr. 26-55.

[17]   <u>See</u> Tr. 32-34.

[18]   <u>See</u> Tr. 32.

[19]   <u>See</u> Tr. 33.

[20]   <u>See</u> <u>id.</u>

[21]   <u>See</u> Tr. 33-34.

duties included significant walking and lifting.[22]

Plaintiff explained that, after working for Walmart for approximately ten years, her foot began hurting to the point that she no longer could walk and, as a result, could not perform her job.[23]  Plaintiff said that, in September 2013, she underwent surgery to correct by amputation the congenital malformation of a sixth toe on her left foot.[24]  Plaintiff reported that she began using a cane after that surgery.[25]

The first question the ALJ asked the VE was if she agreed to testify consistent with the Dictionary of Occupational Titles ("DOT") and, where her opinion conflicted with the DOT, to provide the basis for that opinion.[26]  The VE responded that she would.[27] Later in the hearing, the VE classified the position of fast-food manager as light in exertional demand and skilled and the position of sales associate as light in exertional demand and semiskilled.[28] The VE noted that the position of sales associate as performed by

---

[22]     See Tr. 33, 35.

[23]     See Tr. 34-35, 42-44.

[24]     See Tr. 34, 40.

[25]     See Tr. 41.

[26]     See Tr. 31.

[27]     See id.

[28]     See Tr. 35-36.

Plaintiff, however, would be classified as medium in exertional demand.[29]

In his discussion with Plaintiff, the ALJ confirmed that Plaintiff was sixty years old.[30]  The ALJ did not repeat Plaintiff's age when examining the VE, stating in the hypothetical only that the VE should assume a hypothetical individual of Plaintiff's age, education, and work history.[31]  The ALJ asked whether the following hypothetical individual would be able to perform Plaintiff's past relevant work:

> Let's assume a person limited to sitting six hours, standing and walking six hours; lifting 20 pounds occasionally, 10 pounds frequently; occasional climbing; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling; frequent handling and fingering; person needs to avoid hazardous machinery, unprotected heights.[32]

The VE opined that such an individual would be able to perform Plaintiff's past relevant work as those positions were defined in the DOT but would not be able to perform the sales associate at a medium exertional level as Plaintiff previously had.[33]  However, when the ALJ added the additional limitation that the hypothetical individual would need to rely on a cane to ambulate, the VE opined

---

[29]    See Tr. 36.

[30]    See id.

[31]    See Tr. 50.

[32]    Id.

[33]    See id.

that the individual would not be able to perform any of Plaintiff's past relevant work.[34]

Regarding transferable skills, the VE stated that skills from the position of fast-food manager would transfer to other light or sedentary jobs.[35]  The VE opined that the following specific skills were transferable:

> The ability to address customers' issues and concerns; skills to organize and maintain information; the ability to read invoices, pricing, and general merchandising information; excellent numerical skills[;] . . . the ability to add, subtract, multiply, and divide; skills to maintain inventory and make requisitions.[36]

The ALJ then asked whether, if the hypothetical individual needed to "alternate sitting and standing approximately every half-hour for five/ten minutes," the individual would be able to perform any jobs using the identified transferable skills.[37]  The VE opined that such an individual would be able to perform work as a courtesy booth clerk, general office clerk, and customer service representative, which all were classified as light in exertional demand and semiskilled.[38]  If, however, the individual was unable to sustain a full eight-hour workday, that individual would not be

---

[34]    See Tr. 51.

[35]    See Tr. 50-51.

[36]    Tr. 51.

[37]    Id.

[38]    See Tr. 51-52.

able to perform any of the cited jobs, according to the VE.[39]

Plaintiff's attorney posed a hypothetical individual who had the more restrictive limitations of being capable only of the sedentary level of exertion, of occasional handling, fingering, and feeling, of no climbing ramps or stairs, balancing, or crawling.[40] The VE testified that neither Plaintiff's past work nor any other jobs would be available.[41]

## C.   Commissioner's Decision

On November 25, 2015, the ALJ issued an unfavorable decision.[42] The ALJ found that Plaintiff met the requirements of insured status through December 31, 2017, and that Plaintiff had not engaged in substantial gainful activity since June 1, 2013, the alleged onset date.[43]

The ALJ discussed the medical treatment for all of Plaintiff's impairments, as well as her self-reports on symptoms and limitations.[44]  The ALJ recognized the following impairments as severe: "arthralgia/pain in ankle joint and foot; degenerative disc disease of the cervical spine; mild carpal tunnel syndrome;

---

[39]   See Tr. 52.

[40]   See Tr. 52.

[41]   See Tr. 52-53.

[42]   See Tr. 11-21.

[43]   See Tr. 14, 16.

[44]   See Tr. 18-19.

obesity; hypertension; and degenerative disc disease of the lumbar spine."[45]  He determined that Plaintiff's toe amputation was not a severe impairment.[46]  The ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of any of the listings in the regulations[47] (the "Listings").[48]  The ALJ specifically considered Listings 1.02 (major dysfunction of a joint due to any cause), 1.04 (disorders of the spine), and 14.09 (inflammatory arthritis) and considered obesity as an aggravating factor in combination with Plaintiff's other impairments.[49]

The ALJ then turned to Plaintiff's residual functional capacity ("RFC").[50]  Based on the entire record, the ALJ concluded that Plaintiff was capable of performing light work,

> except she [could not] climb ladders, ropes, or scaffolds; she [could] occasionally climb, balance, stoop, kneel, crouch, and crawl; she [could] frequently handle and finger; she [had to] avoid hazardous machinery and unprotected heights; she require[d] a cane to ambulate; she [had to] alternate sitting and standing every 30 minutes for 5 to 10 minutes.[51]

This determination of Plaintiff's RFC is identical to the

---

[45]   Tr. 16.

[46]   See id.

[47]   20 C.F.R. Pt. 404, Subpt. P, App. 1.

[48]   See Tr. 17.

[49]   See id.

[50]   See Tr. 17-19.

[51]   Tr. 17 (emphasis omitted).

9

hypothetical RFC presented to the VE during the hearing.[52]  Relying on the VE's testimony about the occupational opportunities for the hypothetical individual, the ALJ found Plaintiff unable to perform her past relevant work.[53]

Before addressing whether Plaintiff could perform other jobs existing in significant numbers in the national economy, the ALJ acknowledged that Plaintiff fell within the regulatory category of an "individual of advanced age" on the alleged onset date and aged into the category of "closely approaching retirement age" during the administrative process.[54]  The ALJ made no comment on the effect of these classifications on Plaintiff's ability to work, not even in his discussion of acquired work skills.[55]  In addressing acquired work skills from past relevant work, the ALJ repeated the skills that the VE listed at the hearing as transferable from Plaintiff's work as a fast-food manager.[56]

The ALJ concluded that Plaintiff's acquired work skills were transferable to other jobs and found her capable of performing the requirements of the semiskilled occupations of courtesy booth

---

[52]     Compare id. with Tr. 50-51.

[53]     See Tr. 19-20.

[54]     See Tr. 20 (emphasis omitted).

[55]     See id.

[56]     See id.

clerk, general office clerk, and customer service representative.[57]
In the ALJ's opinion, the VE's testimony was consistent with the
information contained in the DOT.[58]  Therefore, the ALJ found that
Plaintiff was not disabled from the alleged onset date through the
date of the decision.[59]

On January 4, 2016, Plaintiff appealed the ALJ's decision.[60]
On November 16, 2016, the Appeals Council denied Plaintiff's
request for review, thereby transforming the ALJ's decision into
the final decision of the Commissioner.[61]  After receiving the
Appeals Council's denial, Plaintiff timely sought judicial review
of the decision by this court.[62]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner
denying disability benefits is limited to the determination of
whether: 1) the ALJ applied proper legal standards in evaluating
the record; and 2) substantial evidence in the record supports the
decision.  Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

## A.  Legal Standard

---

[57]    See Tr. 20-21.

[58]    See Tr. 21.

[59]    See id.

[60]    See Tr. 8.

[61]    See Tr. 1-4.

[62]    See Tr. 2-3; Doc. 1, Pl.'s Compl.

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). The existence of a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); <u>see also</u> <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless [s]he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

## B.  **Substantial Evidence**

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000)).  It is "something more than a scintilla but less than a preponderance." Id.  The Commissioner has the responsibility of deciding any conflict in the evidence. Id.  If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.  42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its

13

review meaningless.  See id.

## III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff asserts that the ALJ's decision contains the following errors: (1) failing to assess the transferability of skills according to the standard applicable to persons closely approaching retirement age; and (2) finding Plaintiff capable of the lifting and carrying requirements of the identified jobs despite her reliance on a cane to ambulate. Defendant argues that the ALJ's decision is legally sound and is supported by substantial evidence.

### A.  Transferability of Skills

An individual is disabled when she is not only unable to perform past relevant work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." SSR 82-41, 1982 WL 31389, at *1.  This analysis requires that, in addition to the individual's medical condition, the SSA consider the vocational factors of age, education, and work experience.  Id.  For individuals whose past relevant work is categorized as skilled or semiskilled, the work-experience factor involves determining whether the individual developed work skills that are transferable to meet the requirements of other skilled or semiskilled work.  See id. at **1-2; 20 C.F.R. § 404.1568(d)(1).

14

Transferability of skills "is most probable and meaningful among jobs in which: (1) the same or a lesser degree of skill is required . . . ; (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved." SSR 82-41, 1982 WL 31389, at *5; see also 20 C.F.R. § 404.1568(d)(2).  The jobs need not be completely similar, but the degree of transferability depends on where on the continuum "from very close similarities to remote and incidental similarities among jobs." SSR 82-41, 1982 WL 31389, at *5; see also 20 C.F.R. § 404.1568(d)(3).  Age is an important factor in determining transferability because "advancing age decreases the possibility of making a successful vocational adjustment." SSR 82-41, 1982 WL 31389, at *5.

For individuals who are closely approaching retirement age and are limited to light work, the standard for finding transferability is heightened.  See SSR 82-41, 1982 WL 31389, at *5; 20 C.F.R. § 404.1568(d)(4).

> If [the claimant is] closely approaching retirement age (age 60 or older) and [has] a severe impairment(s) that limits [her] to no more than light work, [the SSA] will find that [she has] skills that are transferable to skilled or semiskilled light work only if the light work is so similar to [her] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

20 C.F.R. § 404.1568(d)(4); see also SSR 82-41, 1982 WL 31389, at *5; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f).  In other

15

words, "semiskilled or skilled job duties of [claimants'] past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation."  SSR 82-41, 1982 WL 31389, at *5.  One court interpreted this transferability standard as raising a presumption of disability that the ALJ may rebut by showing that the individual has a particularly transferable skill or vocational asset that would allow for direct entry into another occupation.  See Jeffcoat v. Sec'y of Health & Human Servs., 910 F. Supp. 1187, 1194 (E.D. Tex. 1995).

The ALJ is responsible for determining the individual's work skills, the levels of those skills, and the potential occupations to which those skills are transferable.  SSR 82-41, 1982 WL 31389, at *4.  When necessary, the ALJ may rely on occupational reference sources and/or the testimony of a VE.  Id.  The ALJ must include in his written decision findings of fact related to his decision on transferability and should support those findings with documentation.  Id. at *7 ("[The] ALJ is required to make certain findings of fact and include them in the written decision.").  If the ALJ determines that the individual has transferable skills, he must identify the transferable skills and cite the specific occupations to which they are transferable.  Id.

Several circuits have found that the record must contain

specific finding(s) on vocational adjustment and/or transferability of skills. See, e.g., Abbott v. Astrue, 391 F. App'x 554, 558 (7th Cir. 2010)(unpublished); Webster v. Barnhart, 187 F. App'x 857, 861 (10th Cir. 2006)(unpublished); Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986); Weaver v. Sec'y of Health & Human Servs., 722 F.2d 310, 312 (6th Cir. 1983). The Fifth Circuit has not expressly ruled on this issue.

At Plaintiff's hearing in this case, the ALJ generally acknowledged Plaintiff was sixty years old and included that fact in the hypothetical presented to the VE. However, neither he nor the VE acknowledged that Plaintiff's age landed her in the category of closely approaching retirement age, much less commented at all about the stringent test for vocational adjustment that is applicable to individuals in that age group. Rather, the extent of the VE's testimony was that Plaintiff acquired transferable skills as a fast-food manager that met the requirements for the occupations of courtesy booth clerk, general office clerk, and customer service representative. The VE offered no opinion (and the ALJ asked for none) as to whether these other occupations were so similar to Plaintiff's previous work as a fast-food manager that she would need to make "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." SSR 82-41, 1982 WL 31389, at *5; 20 C.F.R. § 404.1568(d)(4); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f).

17

In his decision, the ALJ relied on the VE's testimony to find that Plaintiff not disabled because she could perform other work existing in significant numbers in the national economy.  The ALJ listed the skills identified by the VE as transferable and the occupations to which the VE said they were transferable.  The ALJ also noted that Plaintiff was an individual of advanced age at the time of the alleged onset of disability and aged into the category of closely approaching retirement before his decision issued. However, he did not mention the applicable legal standard for vocational adjustment, much less discuss its application to Plaintiff's ability to perform the other work identified by the VE.

While the court is disinclined to impose additional legal requirements on ALJs when the Fifth Circuit has not offered its guidance, the court recognizes that the SSA places great emphasis on the effect of advancing age on an individual's ability to make a successful vocational adjustment to other work.  See SSR 82-41, 1982 WL 31389, at *5; 20 C.F.R. § 404.1568; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f).  Moreover, the SSA has mandated that the ALJ make "certain findings of fact and include them in the written decision."  SSR 82-41, 1982 WL 31389, at *7.  Although the only specific findings that Social Security Ruling 82-41 indicated must be identified in the ALJ's decision are the transferable skills and the specific occupations to which they are transferable, the emphasis that the SSA places on age and vocational adjustment

18

requires that the ALJ, at the very least, acknowledge the applicability of a heightened standard for individuals closely approaching retirement age.

The ALJ did not mention his obligation to consider whether Plaintiff could make the transition to the occupations identified by the VE with "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." SSR 82-41, 1982 WL 31389, at *5; 20 C.F.R. § 404.1568(d)(4); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(f). It could be that both the ALJ and the VE considered how Plaintiff's age affected her vocational adjustment to the other jobs but failed to mention that finding; on the other hand, their silence may reflect their failure to take that into consideration. Regardless, their silence provides no assurance to the court that the ALJ complied with his duty to apply the heightened standard in deciding that Plaintiff could perform other jobs.

This error is compounded because the VE's testimony, on which the ALJ relied to support his decision, does not make obvious Plaintiff's ability to adjust in terms of tools, work processes, work settings, or the industry. Fast-food management differs to certain degree from the cited occupations in all four of these areas, particularly work setting and industry. Assuming arguendo that the acquired skills identified by the VE overlapped with the requirements of courtesy booth clerk, general office clerk, and

customer service representative, the court finds that the VE failed to provide any testimony regarding the degree of transferability. Specifically, the VE did not mention whether the same degree of skill would be required, whether the same or similar tools and machines would be used, or whether the same or similar raw materials, products, processes, and services would be involved. See SSR 82-41, 1982 WL 31389, at *5; 20 C.F.R. § 404.1568(d)(2).

The transferability factors need not all be the same or similar to justify finding that a claimant can perform other jobs in many cases, but, for an individual closely approaching retirement, the degree of similarity is significant. Here, the record contains no evidence that Plaintiff's past work as a fast-food manager so closely related to the other identified jobs that Plaintiff could perform the latter "at a high degree of proficiency with a minimal amount of job orientation." SSR 82-41, 1982 WL 31389, at *5. Therefore, the ALJ lacked substantial evidence to support his conclusion that Plaintiff was not disabled because she could perform other work. Cf., e.g., Sergent v. Astrue, Civ. No. 10-CV-01041, 2011 WL 3299051, at *3 (S.D. Tex. Aug. 1, 2011)(noting that the SSA Appeals Council had remanded the case with directions that the ALJ obtain additional evidence from the VE to determine whether the claimant's skills were transferable to other occupations with very little, if any, vocational adjustment); McMillin v. Astrue, Civil Action No. 1:12-CV-03103, 2013 WL

6816374, at *1 (W.D. La. Dec. 19, 2013)(same).

Defendant argues, "Plaintiff's counsel had the opportunity to object or cross-examine the VE on the effect of Plaintiff's age and other characteristics on her ability to perform the identified jobs."[63]  Be that as it may, it was the ALJ's duty in the first place to gather sufficient evidence on the transferability of skills and vocational adjustment and to make those findings.  His failure to do so certainly may have caused him to reach a different result than he otherwise would have.  Cf. Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007)(quoting Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988))(stating that an error is harmless unless it affected a party's substantial rights); Bornette v. Barnhart, 466 F. Supp.2d 811, 816 (E.D. Tex. 2006)(citing Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003))(stating that a harmless error exists only when there is no possibility that the ALJ would have reached a different conclusion absent the error).

The court finds that the case should be remanded for the ALJ to consult a VE on: (1) the degree of transferability between the skills Plaintiff acquired in her past relevant work and the requirements of the cited potential occupations; and (2) the vocational adjustment required for Plaintiff to transition to those occupations.   The ALJ must explain his determinations on

---

[63]     Doc. 12, Def.'s Resp. to Pl.'s Mot. for Summ. J. p. 4.

transferability and vocational adjustment.  Although this is
sufficient reason for remand, the court finds it appropriate to
also address Plaintiff's other objection to the ALJ's decision.

**B.** **Reliance on a Cane**

The SSA regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects
weighing up to 10 pounds.  Even though the weight lifted
may be very little, a job is in this category when it
requires a good deal of walking or standing, or when it
involves sitting most of the time with some pushing and
pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).  The ability to perform light work assumes
the ability to perform sedentary work.  See id.  In the context of
sedentary work, the SSA has determined that the use of a hand-held
assistive device, such as a cane, does not completely erode the
occupational base.  See SSR 96-9p, 1996 WL 374185, at *7.  When a
cane is medically required, the circumstances for which it is
needed must be considered by the ALJ to determine whether its use
erodes the occupational base of sedentary jobs.  See id.  "In these
situations . . . it may be especially useful to consult a
vocational resource in order to make a judgment regarding the
individual's ability to make an adjustment to other work."  Id.

VEs are valuable resources because they are "familiar with the
specific requirements of a particular occupation, including working
conditions and attributes and skills needed."  Carey, 230 F.3d at
145 (quoting Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986));

see also Dominguez-Herrera v. Astrue, 334 F. App'x 651, 654 (5th Cir. 2009)(unpublished)(quoting Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995)).  Although the SSA relies primarily on the DOT for "information about the requirements of work in the national economy," the SSA turns to VEs and vocational specialists "to resolve complex vocational issues."  SSR 00-4p, 2000 WL 1898704, at *2.  The ALJ is required to ask a VE if her testimony about the requirements of a job conflicts with information in the DOT and, if it does, to obtain a reasonable explanation for the conflict before relying on the VE's testimony instead of the DOT information.  See SSR 00-4p, 2000 WL 1898704, at **2, 4.  Absent an unresolved conflict, the ALJ may rely on the VE's testimony as substantial evidence of an individual's ability to perform certain jobs as long as the ALJ posed a hypothetical question that incorporated all of the impairments that the ALJ recognized as supported by the record and the claimant was given an opportunity to correct errors or omissions in the hypothetical question.  See Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994);  SSR 00-4p, 2000 WL 1898704, at *4.

In the decision in this case, the ALJ repeatedly stated that Plaintiff did not have a prescription for a cane, but, nevertheless, he included its use as a limitation in Plaintiff's RFC.  At the hearing, the ALJ modified the original hypothetical question to include Plaintiff's use of a cane.  To the original hypothetical question, the VE answered that the individual could

perform Plaintiff's past relevant work as well as certain other jobs that were light in exertional demand.  With that additional limitation of cane usage, the VE opined that the individual could not perform Plaintiff's past relevant work but could still perform other light work.   In response to the ALJ's inquiry, the VE identified no inconsistencies between the DOT and her testimony. Plaintiff's attorney took the opportunity to modify the hypothetical question, limiting the individual to sedentary work, among other changes, but did not further explain Plaintiff's reliance on a cane.

Plaintiff's contention, based on Social Security Ruling 96-9p's discussion of sedentary work, that "[a]gency policy recognizes that the use of a cane is, at best, consistent with sedentary, not light, work" is unfounded.[64]  Plaintiff cites to no legal authority that holds an individual who relies on a cane cannot perform any light work.  Regardless, the vocational expert considered whether reliance on a cane limited Plaintiff's occupational choices and concluded that it did prevent her from past relevant work.  The ALJ was entitled to rely on that opinion as substantial evidence that Plaintiff could perform light work despite reliance on a cane.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED IN PART AND DENIED IN PART** and Defendant's motion

---

[64]     Doc. 10, Pl.'s Mot. for Summ. J. p. 10.

be **GRANTED IN PART AND DENIED IN PART**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 22nd day of January, 2018.

_____
U.S. MAGISTRATE JUDGE